## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICARDO B. GURROLA and MARLEINET T. GURROLA, on behalf of themselves and all others similarly situated, | Civil Action No.: 1:23-cv-03438 |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| FORD MOTOR COMPANY, a Delaware corporation. | |
| Defendant. | |

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Ricardo B. and Marleinet T. Gurrola ("Plaintiffs"), by and through their undersigned counsel, files this First Amended Class Action Complaint on behalf of themselves and all other similarly situated persons in the State of Illinois who purchased or leased a completed motor home vehicle utilizing an E-Series Cutaway Vehicle designed, manufactured, and distributed by Defendant, Ford Motor Company ("Defendant" or "Ford"). The allegations in this amended complaint are based on personal knowledge of the Plaintiffs' own experiences and are made as to other matters based on an investigation by counsel, including analysis of publicly available information

### I.    INTRODUCTION

1.    This consumer class action concerns Defendant's failure to disclose material facts and a significant safety issue stemming from a design defect in the Ford E-Series Cutaway's ("Ford Cutaways" or "Cutaway") suspension system.

2.    A Cutaway is an incomplete vehicle, which means the Cutaway  must undergo at least one further stage of build to be considered a finished vehicle, ready for use. For example, a chassis cab

is an incomplete vehicle since a body must be added for it to be finished.

3.      Federal regulations, 49 C.F.R. § 567.3 define an incomplete vehicle as "[a]n assemblage consisting, at a minimum, of chassis (including the frame) structure, power train, steering system, **suspension system**, and braking system, **in the state that those systems are to be part of the completed vehicle**, but requires further manufacturing operations to become a completed vehicle." 49 C.F.R. §567.3 (emphasis added).

4.      Ford represents and sells the Cutaways to Final-Stage Manufacturers who then complete the vehicle. *Id*. (defining Final-Stage Manufacturers). Depending on the intended final completed vehicle, Ford includes with the Cutaways certain optional prep packages to ready the vehicle for the Final-Stage Manufacturer. For incomplete vehicles intended to be made into motor homes, the prep packages include the "motorhome prep package disc 158" WB" and "modified motorhome package." Exhibit A (Plfs. Ford Window Sticker).

5.      To accommodate Ford's approved completed vehicle types, the Cutaway's gross vehicle weight rating is critical. Per federal regulations, every vehicle manufacturer must include the vehicle's "gross vehicle weight rating" ("GVWR") for the completed vehicle. 49 CFR § 571.3(b). The GVWR is the heaviest weight the vehicle is designed to safely accommodate and operate.

6.      Ford, as required by law, set the Cutaway's GVWR. For example, the E-450 Dual Rear-Wheel Cutaway has a GVWR of 14,500 lbs. Ford expressly advertises that "[t]he Ford Class C Motorhome Chassis is available in a choice of GVWR capacities from 10,500 lbs. up to 14,500 lbs. GVWR. This wide selection of chassis allows motorhome manufacturers to more closely match their motorhome body to the required chassis payload capacity." Exhibit B (Ford Commercial Vehicles Brochure).

7. Yet, Ford delivers the Cutaways to the Final-Stage Manufacturer with a design defect in the suspension, which makes the Cutaway incapable of handling the stated GVWR when completed.

8. Ford designed the Cutaway's suspension system with fixed caster / camber that prevents the completed vehicle from being aligned to operate within the GVWR. Per federal law, Ford is responsible, as the incomplete vehicle manufacturer, to design and deliver the Cutaway with a suspension system capable of tolerating the GVWR of the completed vehicle. Ford's suspension system, which is designed to tolerate a motor home, does not.

9. Ford, however, expressly advertises the opposite. For sure, in addition to the "motorhome prep package[s]," Ford expressly claims that the Cutaways have the "[t]he Chassis of Choice" with "Electronic stability control" and a "Twin I-Beam independent front suspension (***with caster/camber adjustment***), front stabilizer bar and gas pressurized shock absorber [that] contribute to a smooth, comfortable ride."

10. Despite expressly advertising that with a "caster/camber adjustment" the consumer will have a "smooth, comfortable ride," Ford delivers these "motorhome prep" Cutaways with *nonadjustable* caster and camber, which renders the Cutaway incapable of handling the stated GVWR, and therefore, impossible to align after it is built into the intended motor home. To align the vehicle, and make it safe for operation as a motor home, the only remedy is for the consumer to modify the Cutaway's suspension system by purchasing aftermarket parts.[1]

---

[1] The Final-Stage Manufacturer cannot alter the Cutaway's suspension system because doing so would void Ford's warranty to the end-user consumer pursuant to Ford's "Alteration or Modification" warranty provision.

11.    Plaintiffs purchased a motor home that included a Ford Cutaway with the Ford "motorhome prep package." Plaintiffs' Cutaway began to pull to one side of the road within the first two months of ownership, and neither Ford nor its dealers provided Plaintiffs a remedy.

12.    Plaintiffs, therefore, were required to purchase and have installed aftermarket parts to modify Ford's suspension system to accommodate the GVWR so that the vehicle could be aligned and safely driven as a motor home. Plaintiffs spent $1,836 to modify the Cutaway's motor home suspension.

13.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and the class defined below. Plaintiff asserts claims pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C.§§ 2301, et seq. ("MMWA"), common law breach of express and implied warranties, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act.  Plaintiffs seek both damages and declaratory relief.

## II.    JURISDICTION AND VENUE

14.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

15.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in this judicial district.

### III.   PARTIES

#### A.   Plaintiffs

16.   Plaintiffs Ricardo and Marleinet Gurrola are adult citizens who reside in Cook County, Illinois. On March 8, 2022, Plaintiffs purchased from General RV in Huntley, Illinois, a 2022 Ford E-series (E-450) Cutaway that was completed as a motor home, VIN No. 1FDXE4FN7NDC40751.

17.   Plaintiffs' Cutaway included Ford's "Motorhome Prep Pkg. Disc 158" WB," "Modified Motorhome PKG," and the "14500# GVWR Package." *See* Exhibit A (Ford Window Sticker for Plaintiffs' Cutaway). The Final-Stage Manufacturer completed Plaintiffs' Cutaway into a motor home as intended.

18.   As standard equipment, Plaintiffs' Cutaway included the advertised Twin I-Beam Independent Front Suspension "with caster/camber adjustment." Yet, the Plaintiffs' Cutaway, which was specifically prepped with Ford's "motorhome prep package," did not have the capability to adjust caster / camber, instead it was designed and manufactured with the exact opposite: a fixed caster camber.

19.   Plaintiffs noticed that their Cutaway pulled right within the first two months of driving. On May 2, 2022, with the vehicle having just 3,691 miles, Plaintiffs brought the Cutaway to Hawk Ford for repair of the alignment issue. Hawk Ford charged Plaintiffs $82.50 to inspect the steering wheel and column but did not remediate the pulling issue.

20.   Unable to properly align the Cutaway due to Ford's suspension design, Plaintiffs had the Safe T Plus system installed on their Cutaway's suspension system so that it could be properly aligned. Plaintiffs paid $1,836.00 to modify the motor home's suspension.

### B. Defendant

21.     Defendant, Ford Motor Company, is a corporation organized and incorporated in the State of Delaware with its principal place of business and headquarters located at 1 American Road, Dearborn, Michigan 48126. Ford, designs, manufactures, markets, distributes, warranties, and sells Ford automobiles and parts for those automobiles.

22.     To sell vehicles to the public, Defendant enters into agreements with authorized dealerships that are permitted to service and repair Ford vehicles under the warranties Ford provides directly to consumers who purchased or lease Ford vehicles, such as Hawk Ford. All service and repair at an authorized dealership are completed according to Ford's instructions, issued through service manuals, technical service bulletins ("TSBs"), technical tips ("TT"), and other documents. Per the agreements between Defendant and the authorized dealers, consumers such as Plaintiff can receive services under Ford's issued warranty at dealer locations that are convenient to them. These agreements provide Defendant with a significant amount of control over the actions of the authorized dealerships.

## IV.     FACTUAL BACKGROUND

### A. Ford's Cutaway Vehicles

23.     Defendant Ford designs and manufactures the E-Series Cutaway chassis with an engine and drivetrain. These Ford Cutaways are to be sold to third parties who use the base to build out recreational vehicles, motor homes, box trucks, dump trucks, ambulances, passenger vans or utility vans, among other uses.



**Ford E-350 Cutaway**

24.     Federal regulations govern Ford as an incomplete vehicle manufacturer and the Cutaways themselves, as incomplete vehicles. 49 C.F.R. §567.3. The regulations defined an incomplete vehicle as "[a]n assemblage consisting, at a minimum, of chassis (including the frame) structure, power train, steering system, suspension system, and braking system, *in the state that those systems are to be part of the completed vehicle* but requires further manufacturing operations to become a completed vehicle." 49 C.F.R. §567.3 (emphasis added).

25.     Federal regulations also require the incomplete vehicle manufacturer identify the GVWR which is the "value specified by the manufacturer as the loaded weight of a single vehicle."  49 CFR § 571.3(b).  The GVWR is the actual weight of the fully loaded vehicle including all cargo, fluids, passengers, and optional equipment intended to represent the heaviest weight the vehicle chassis is designed to safely carry.

26.     In the case of an incomplete vehicle, like the Ford Cutaways, federal regulations require the manufacturer to include gross vehicle weight rating of the completed vehicle for which the incomplete vehicle is intended. 49 CFR § 568.4(4).

27.     On its website, and as part of its marketing, Ford affirmatively represents the GVWR of the Cutaways.[2]

**E-350 SINGLE-REAR-WHEEL CUTAWAY**

The E-350 Cutaway with single rear wheels delivers all the power and capability needed for a wide range of commercial and recreational applications. It's powered by a standard 7.3L V8 Premium-rated engine or available 7.3L V8 Economy-rated engine calibration. It has an available GVWR of 10,050 lbs. *

**E-350 DUAL-REAR-WHEEL CUTAWAY**

The E-350 with dual rear wheels offers midrange capacities in available GVWRs from 11,500 lbs. to 12,500 lbs.,* with an available max payload rating of 7,210 lbs. ** (minus body weight). The E-350 DRW is powered by a standard 7.3L V8 Premium-rated engine or available 7.3L V8 Economy-rated engine calibration.

**E-450 DUAL-REAR-WHEEL CUTAWAY**

The E-450 with dual rear wheels delivers high-end capability with an available GVWR of 14,500 lbs. * and an available payload rating of 8,980 lbs. (minus body weight). ** If you're into towing heavy loads, the E-450 DRW has a maximum GCWR of 22,000 lbs. Power is supplied by a standard 7.3L V8 Premium-rated engine or available 7.3L V8 Economy-rated engine.

28.     As required by law, Ford also includes a placard on the inside of the door of the Cutaways listing the GVWR. For the E-450 series vehicle, the GVWR is 14,500 lbs. as set forth in the exemplar below.



29.     In other words, Plaintiffs' Ford E-450 is affirmatively represented to be capable of safe operation with a GVWR of up to 14,500 lbs., which is also consistent with the 14500# GVWR

---

[2] https://www.ford.com/commercial-trucks/e-series-cutaway/

Package identified on the widow sticker for Plaintiffs' Cutaway. *See* Exhibit A.

30.     Ford also expressly advertises the GVWR for use in motor homes claiming, "[t]he Ford Class C Motorhome Chassis is available in a choice of GVWR capacities from 10,500 lbs. up to 14,500 lbs. GVWR. This wide selection of chassis allows motorhome manufacturers to more closely match their motorhome body to the required chassis payload capacity." Exhibit B (Ford Commercial Vehicles Brochure).

31.     Ford also claims that the, "14,500 lbs. Maximum GVWR, premium features and components, plus after-the-sale service support have made Ford E-Series the chassis of choice for today's Class C motorhome buyer. Based on recent data, over 58 percent of Class C buyers selected a motorhome built on the Ford chassis." *Id*. at 8.

### B.     Ford Defectively Designed the Cutaway Suspension

32.     Camber is the inward or outward tilt of the front tires as viewed from the front. Inward tilt is negative, outward tilt is positive. Camber is used to distribute load across the entire tread. Improper camber makes the tire wear on one edge and causes the vehicle to pull to the side that has the most positive camber.



33.      Caster is the fore or aft slope of the steering axis. The steering axis is a line drawn through the upper and lower ball joints of the knuckle. Positive caster is when the bottom of the steering axis line is in front of the tire's contact patch. Zero caster is when the steering axis is at 0 degrees. Factory alignment specs for basically all vehicles call for a certain degree of positive caster. This ensures good stability, helps maintain straight-ahead direction and promotes steering wheel self-centering.  If too little caster exists, the vehicle will wander and weave on the road, requiring constant correction in steering.



34.      The ability to adjust caster and camber is crucial to alignment of the vehicle, which impacts the amount of weight the vehicle can safely carry.  The more weight that is applied to the steering axle the further down out the top of the wheels point inward (i.e., negative camber) unless the caster camber can be adjusted.

35.      As a vehicle is loaded with more weight the suspension springs will, naturally, begin to carry the load. The result is negative camber. The diagram below shows the I-beam suspension without load.



36.     The next diagram shows weight applied to the I-beam suspension and the resulting negative camber of 2 degrees.



### C. Ford's Affirmative Representations About the Cutaway's Suspension

37.    Ford expressly advertises the Cutaways for use as a motor home that will provide a

"GREAT RIDE, STEERING AND HANDLING."3 See Exhibit B at 5.



# E-SERIES CLASS C MOTORHOME CUTAWAY CHASSIS

## GREAT RIDE, STEERING AND HANDLING

The front and rear suspension systems include robust stabilizer bars to help deliver solid handling. Front and rear shock absorbers are rated to the load range of each model, and tuned to deliver a smooth ride. The steering gear boost-curve enhances road feel and provides excellent steering feedback to the driver.

## AFT-OF-AXLE FUEL TANK

- A 40-gallon aft-of-axle fuel tank is standard on E-350 and available on E-450
- A 55-gallon aft-of-axle fuel tank is standard on E-350 DRW and available on E-350 DRW with 158 inch wheelbase

An Auxiliary Fuel Port, located on the fuel tank, offers entry point access to the fuel tank for specialized gas powered equipment such as a power generator.

## MOTORHOME PREP PACKAGE

- High-Series Exterior Upgrade Package
- Power door locks and windows
- Manual pedestals
- Cruise control
- Cloth sun visors
- Class I Trailer Tow Prep Package
- Tire Pressure Monitoring System (DRW)

## SAFETY FEATURES

- Standard Traction Control with brakes
- Optional Driver Assist Technology package, with the following features:
  - Automatic Emergency Braking
  - Distance Alert/Indication
  - Post Impact Braking
  - Adaptive Cruise Control
  - Lane Departure Warning
  - Driver Alert
  - Auto High Beam Control

## NO CHARGE CUSTOMER SERVICE

Ford Motorhome Chassis owners can receive 24/7 service assistance by dialing 1-800-444-3311 (see the back cover of this brochure for details). In addition to the 24/7 service assistance, Ford owners also are provided Roadside Assistance for 5 years or 60,000 miles, whichever occurs first (see your Ford Dealer for details). These services are provided to the owner at NO CHARGE and are transferable to a new owner as long as the vehicle remains within the time and mileage coverages.

## 24/7 SERVICE ASSISTANCE
## 1-800-444-3311

2021 model shown.

---

3 Ford also expressly represents that it will provide customer support to "Ford Motorhome Chassis owners" putting Ford in privity with the end user consumer.

38.     Ford also claims the Cutaway's standard equipment includes the "Twin I-Beam Independent Front Suspension." *See* Exhibit A. Ford affirmatively states that this front suspension is a "Twin-I-Beam independent front suspension (*with caster / camber adjustment*)..."[4] Ford understands that the "caster / camber adjustment" is necessary for the independent front suspension.



[4]Ford's advertisement for the 2021 E-Series Class C Motorhome Chassis  available at: https://www.fleet.ford.com/content/dam/aem_fleet/en_us/fleet/towing-guides/2020_Ford_RVandTrailerTowingGuide.pdf (last visited May 2, 2022) (emphasis added).

39.     Yet, the Cutaway does **not** allow for any caster or camber adjustment and therefore the suspension cannot accommodate the GVWR once the motor home is built. And without any adjustability, the result is that the vehicle will pull to one side and not safely track the road. Ford concedes the only way to align the vehicle is for the consumer to purchase of aftermarket parts.

40.     All the Cutaways have identical fixed, nonadjustable caster / camber, a one size fits all approach regardless of Ford's inclusion on certain Cutaways of the "motorhome prep package disc 158 WB," the "modified motorhome package" and the "14500# GVWR package." Exhibit A. The sleeves are keyed and cannot be rotated for purposes of adjustment. The non-adjustable caster / camber sleeve on a Ford Cutaway is pictured below.



41.     Ford knows that certain Cutaways it designs, manufactures, sells, and warrants, are incomplete vehicles that will be specifically used for a motor home. *See* Exhibits A-B. Yet, Ford designed the suspension with a fixed caster camber, which cannot be adjusted to account for the motor home build or the GVWR Ford established.

42.     This could be easily remediated by moving to an adjustable caster camber, as Ford advertises in its promotional materials as the "Chassis of Choice." *See supra* fn. 4.

43.     To remediate the problem, the owner of the vehicle must purchase aftermarket parts, including adjustable bushings to adjust caster / camber and/or sway bars, just as Plaintiff purchased for $1,836.

### D.     Ford's Knowledge

44.     Plaintiffs are not alone. Owners of Ford Cutaways have recognized the need to buy aftermarket parts to make the vehicle safe to operate. As one owner's complaint to the National Highway Traffic Safety Administration ("NHTSA") states:

> I PURCHASED THIS THOR MOTOR HOME FROM A DEALER ON 09/06/2019, USED OUR FIRST TRIP 260 MILES BOTH WAYS I HAVE FOUND A VERY DIFFICULT TIME ON KEEPING UNIT ON ROAD PROPERLY CONSTANTLY DRIFTING AND VERY FATIGUED IN DRIVING. AT CAMP SIGHT AN IDENTICAL 31W THOR 2018 OWNER STATED HE HAD SAME PROBLEM AN NEIGHBORS STATED THAT STABILIZER NEEDS TO BE REPLACED WITH A SAFETPLUS 31-140 UNIT AND NOW NO PROBLEM. HELP!!! I WOULD CONSIDER THIS TO BE A SAFETY ITEM THAT NEEDS CORRECTION. HIGHWAY 65MPH.[5]

45.     In RV forums, Ford Cutaway owners advise each other of the problems associated with the inability to adjust caster / camber.

> The only way to adjust caster and camber is with new bushings so I went and bought myself some 4 degree adjustable caster camber bushings and got to work. I adjusted the bushings to add 3 degrees of positive caster from stock settings and set it neutral on camber which in effect was -0.25 from stock since the stock alignment had a +0.25 bushing for camber[6]

---

[5] https://www.nhtsa.gov/vehicle/2016/FORD/E-450#complaints

[6] https://www.rv.net/forum/index.cfm/fuseaction/thread/tid/28216148/print/true.cfm

46.     Another Ford Cutaway owner is quoted below:

>        The E450 cutaway uses non adjustable shims that set the caster on
>        my 29mv in the 2 to 2.5 degree range. Moog manufactures
>        adjustable ones that allow plus 5 degrees. Incidentally the shims
>        determine camber also. Night and day difference in handling with
>        only caster set to plus 5 degrees.[7]

47.     A post from as early as February 2011 on RV Forum:

>        Yes, I also have the same suspension, and so does every E350/E450.
>        The top mount of your upper ball joints are shipped from the factory
>        with fixed non adjustable sleeves that need to be replaced.
>
>        In my opinion, your best choice in adjustable sleeves are from
>        Ingalls Engineering. They are clearly marked as INGALLS 594.
>        They consist of two concentric sleeves that have 360/24 = 15
>        degrees indices labeled A through X. In order to set them you need
>        a "cheat" sheet which is on the web as "59400.pdf". These sleeves
>        will allow adjustment of both CAMBER and CASTER up to +/- 2.0
>        degrees each, in any combination of CASTER or CAMBER. All you
>        need to do is, using the cheat sheet, is take the max adjustable +
>        CASTER change which is +2.0 any you will see a black and white
>        improvement.[8]

## V.    CLASS ACTION ALLEGATIONS

48.     Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs intend to seek certification of the

following Class:

>        All persons who purchased or leased in the State of Illinois a
>        completed motor home vehicle utilizing a Ford E-Series Cutaway
>        between 2018 and the date of class certification.

49.     Excluded from the class are: Ford, any affiliate, parent, or subsidiary of Ford, any entity in

which Ford has a controlling interest, any officer, director, or employee of Ford; any successor or

assign of Ford; anyone employed by counsel for Plaintiffs in this action; any judge to whom this

---

[7] https://www.jaycoowners.com/forums/f5/having-alignment-done-tomorrow-70012-2.html

[8] https://www.rvforum.net/threads/e350-e450-handling-problems-are-caused-by-too-little-caster.40337/

case is assigned; his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such people.

50. __NUMEROSITY__: The members of the classes are so numerous that joinder of all members is impracticable. While the precise number of Class Members can only be confirmed through discovery, it is estimated that there are at least hundreds, if not thousands, of persons who purchased Class Vehicles.

51. __COMMON QUESTIONS PREDOMINATE:__ There are questions of law and fact common to all members of the Class. Specifically, Plaintiffs', and the putative class's, claims arise from the same event or practice or course of conduct by Ford that gives rise to those claims of the putative class, and Plaintiffs' claims are based upon the same legal theories as those of the putative class. Ford has delivered a defectively designed incomplete vehicle, engaged in a pattern and practice, in violation of the law, of not advising end users that the E-Series vehicles that they would need to be adjusted, including the use of aftermarket products not covered by warranty, to accommodate the GVWR.

52. The questions of law and fact common to the Class predominate over questions that may affect individual members, including the following:

      a.      Whether Ford knew its E-Series Cutaways suspension system could not accommodate the GVWR without modification.

      b.      Whether Ford defectively designed the suspension system of the motor home prep package rendering it incapable of safe operation at the GVWR.

      c.      Whether Ford misrepresents that with its Twin I-Beam independent front suspension the caster and camber can be adjusted.

      d.      Whether Plaintiff, and the putative Class, are entitled to be reimbursed for alterations and/or modifications to accommodate the stated GVWR for the Ford E-Series.

53.     **TYPICALITY**: The claims and defenses of the Plaintiffs are representative of the Class

he seeks to represent and typical of the claims and defenses of the class because the Plaintiff and

the Class all purchased E-Series Cutaway vehicles that were unable to tolerate the GVWR which

resulted in the vehicle pulling and wandering on the road while in operation requiring alterations

and/or modifications, including the addition of aftermarket parts.

54.     **ADEQUACY**: Plaintiffs will fairly and adequately assert and protect the interest of the

proposed class because Plaintiffs hired attorneys who are experienced in prosecuting class action

claims and the Plaintiff has no conflict of interest that will interfere with the maintenance of a class

action.

55.     **SUPERIORITY**: A class action provides a fair and efficient method for adjudicating the

instant controversy.  Common questions of law and fact predominate over any questions affecting

only individual class members and prosecution of separate action by individual members of the

class would risk inconsistent and varying adjudications against Ford.

56.     The claims of individual class members are small in relation to the expense of litigation,

making a class action the only procedure in which class members can, as a practical matter, recover

damages done to them by Ford.  A class action is superior to, and more efficient than, adjudicating

hundreds, if not thousands, of individual lawsuits.

## VI.   CLAIMS FOR RELIEF

### COUNT I
### Violation of the Magnuson-Moss Warranty Act
### 15 U.S.C. §§ 2301, (et seq.)

57.    Plaintiffs, individually and on behalf of the putative class, hereby incorporate each and every allegation as though fully set forth below.

58.    The MMWA provides a private right of action by purchasers of consumer products to protect consumers against deceptive warranty practices. 15 U.S.C. § 2310(d)(1).

59.    The Class Vehicles are consumer products, as that term is defined in 15 U.S.C. § 2301(1).

60.    Plaintiffs and the members of the class are consumers, as that term is defined in 15 U.S.C. § 2301(3).

61.    Ford is a supplier and warrantor, as those terms are defined in 15 U.S.C. § 2301(4)-(5).

62.    The MMWA provides a cause of action for breach of warranty or other violations of the Act. 15 U.S.C. § 2310(d)(1).  Ford breached its express limited warranty by failing to remediate the alignment, suspension and/or steering defects with the Cutaways. 15 U.S.C. § 2308(a)(1). Plaintiffs, and the putative class, have suffered damages as a result of Ford's breach of its express warranty. 15 U.S.C. § 2310(d)(1)-(2).

63.    Ford was provided notice of the claims raised by Plaintiffs and was afforded a reasonable opportunity to cure.  Ford failed to cure and instead rejected Plaintiff's warranty claim under the guise that the incomplete vehicle had been altered or modified after leaving Ford's control.

64.    Ford's warranty conduct constitutes "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," and they are unlawful. 15 U.S.C. § 2310(b); 15 U.S.C. § 45(a)(1).

65.    Plaintiffs and the class members have suffered, and are entitled to recover, damages because of Ford's breach of its express warranty.

66. Plaintiffs also seek an award of costs and expenses, including attorneys' fees, under the MMWA to prevailing consumers in connection with the commencement and prosecution of this action. 15 U.S.C. § 2310(d)(2). Plaintiffs and the prospective class intend to seek such an award, including expert witness costs and other recoverable costs, as prevailing consumers at the conclusion of this lawsuit.

### COUNT II
### Breach of Express Warranty
### Ill. Comp. Stat. §§ 5/2-313 and 5/2A-210

67. Plaintiffs individually and on behalf of the putative class, hereby incorporate every allegation above as though fully set forth below.

68. Ford is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

69. The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

70. Ford provided all purchasers of the Class Vehicles with an express warranty for the Cutaways, which became a material part of the bargain.

71. When Plaintiffs and the Class purchased and/or leased their Cutaways with the caster camber defect, Ford expressly warranted under its NVLW that it would remedy the defect through repair, replacement or adjustment of the defective parts during the applicable warranty period.

72. Ford denies warranty coverage related to the suspension defect based on its exclusionary language for the 3 year/36,000 mile bumper to bumper New Vehicle Limited Warranty excluding coverage based on alternations or modifications to the Cutaway.

73. Ford breached its warranty by refusing to remediate the suspension issues with the

Cutaways during the applicable warranty period.

74. As a direct and proximate result of Ford's breach, Plaintiffs and the putative class have suffered damages in, at the very least, the amounts paid to perform wheel alignment, time lost without their vehicle, and the purchase and installation of aftermarket parts.

**COUNT III**
**Breach of Implied Warranty of Merchantability**
**810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212**

75. Plaintiffs, individually and on behalf of the putative class, hereby incorporate every allegation above as though fully set forth below.

76. Ford is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

77. The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

78. A warranty that the Class Vehicles were in merchantable condition is implied by law under 810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212.

79. Ford impliedly warranted that the Cutaways, which it designed, manufactured, and/or sold, were merchantable, fit and safe for their intended use, including the specific capability of safe operation at loads up to the stated GVWR.

80. The design defect alleged herein renders the. Cutaways unmerchantable as a completed motor home. The Cutaways, however, do not operate safely under their advertised GVWR, and therefore, are unsafe, unfit for their intended use, which threatens the health and safety of the vehicle operator and its occupants. The Cutaways are therefore not merchantable or fit for their ordinary purpose. Ford breached the implied warranty of merchantability in the sale or lease of the

Cutaway vehicles as they were not fit for their ordinary, intended purposes, including carrying loads up to the stated GVWR, and therefore, not merchantable.

81.    As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs suffered damages including the cost of a failed vehicle alignment by Ford, the loss of use of their vehicle, and the cost to purchase and have installed an aftermarket part to remediate the defect during the applicable warranty period.

**COUNT IV**
**Breach of Implied Warranty for a Particular Purpose**
**810 Ill. Comp. Stat. §§ 5/2-315**
**(Additionally, or in the Alternative to Count III)**

82.    Plaintiffs, individually and on behalf of the putative class, hereby incorporate every allegation above as though fully set forth below.

83.    Ford is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

84.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

85.    Ford designed and manufactured Plaintiffs' Cutaway and included the "motor home prep package" intending and understanding that as a completed vehicle the Cutaway would be a motor home with a GVWR of up to 14,500 lbs.

86.    The Final-Stage Manufacturer relied on Ford to ensure the Cutaway was able to serve the identified, specific purpose, of a motorhome.

87.    Ford knowingly sold the Cutaway to the Final-Stage Manufacturer with the understanding it would be completed into a motor home for purchase by consumers like Plaintiffs.

88.    Ford impliedly warranted that the Cutaways, it designed, manufactured, and/or sold, were

fit for a particular purpose, use as a motor home with a GVWR not to exceed 14,500 lbs.

89.     The Cutaways, however, do not operate safely as a motor home within the advertised GVWR, and therefore, are unsafe, unfit for their stated purpose, which threatens the health and safety of the vehicle operator and its occupants. The Cutaways are therefore not fit for their ordinary purpose.

90.     As a direct and proximate result of Ford's breach of the implied warranty of fitness for a particular purpose, Plaintiffs suffered damages including the cost of revising the suspension, a failed vehicle alignment by Ford, the loss of use of their vehicle, and the cost to purchase and have installed by Ford an aftermarket part to remediate the defect during the applicable warranty period.

### COUNT V
### Violation of the Illinois Consumer Fraud and
### Deceptive Business Practices Act
### 815 ILCS 505/1, et seq. and 720 ILCS 295/1A

91.     Plaintiffs, individually and on behalf of the putative class, hereby incorporate every allegation above as though fully set forth below.

92.     Ford is a "person" as that term is defined in 815 ILCS 505/1(c).

93.     Plaintiffs and the putative class members who purchased or leased Cutaways are "consumers" under as that term is defined in 815 ILCS 505/1(e).

94.     The purpose of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") is to enjoin trade practices which confuse or deceive the consumer. The Illinois CFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815

ILCS 505/2.

95.     Ford participated in deceptive trade practices that violated the Illinois CFA as described

below and alleged throughout the Complaint. Ford's practices, acts, policies, and course of conduct

violated Illinois CFA's prohibition on unfair and deceptive conduct in that:

>           a.      Ford sold the Cutaway's misrepresenting their caster /
>           camber were adjustable, knowing they were not;
>
>           b.      Ford knew that the Cutaways could not carry their stated
>           GVWR without adjustments, modifications and/or aftermarket parts
>           it would not cover in any warranty;
>
>           c.      Ford knowingly denied warranty claims based on false
>           pretenses knowingly built the Cutaways to not allow for any
>           adjustment to caster and/or camber to accommodate the vehicle's
>           GVWR;
>
>           d.      Ford forced Plaintiffs and the putative class members to
>           expend money at its dealerships and other third-party suspension
>           and alignment repair shops to diagnose and repair the Cutaways
>           because the caster / camber on the Cutaways was not adjustable as
>           Ford represented;
>
>           e.      Ford forced Plaintiffs and the putative class members to
>           expend money at its dealerships and other third-party suspension
>           and alignment repair shops to diagnose and repair the Cutaways,
>           despite the representations about GVWR and the warranty covering
>           suspension and alignment.

96.     Ford's affirmative actions in misrepresenting the caster camber as adjustable are deceptive

in that it delivered incomplete vehicles with a suspension system capable of safely performing for

the completed vehicle without considerable modifications and/or the installation of aftermarket

parts.

97.     Ford also deceptively sells the Cutaways intentionally claiming they are specially prepared

with a motor home package with a GVWR of up to 14,500 lbs.

98.     Plaintiffs and the putative class were deceived by Ford's failure to disclose that, in fact,

adjustments and/or installation of aftermarket parts would be necessary to make the vehicle safe

for operation as a motor home within the staged GVWR. Plaintiffs and the Class suffered out-of-pocket losses in the amounts they paid to remediate the defective condition of the Cutaway.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

a)  For an order certifying the proposed class and appointing Plaintiffs and Plaintiffs' counsel to represent the class;

b)  For an order awarding Plaintiffs and the class compensatory, actual, statutory, consequential and/or any other form of damages provided by and pursuant to the causes of action cited above;

c)  For an order awarding Plaintiffs and the class pre-judgment and post-judgment interest;

d)  For an order awarding Plaintiff and the class reasonable attorneys' fees and costs of suit, including expert witness fees; and

e)  For an order awarding such other and further relief as this Court may deem just and proper.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiffs and the putative class hereby demand trial by a jury of all issues triable by right.

Dated:  June 14, 2024                        BY:  *s/Simon B. Paris*
                                                  Simon B. Paris
                                                  Patrick Howard
                                                  SALTZ, MONGELUZZI, &
                                                  BENDESKY, P.C.
                                                  1650 Market Street, 52nd Floor
                                                  Philadelphia, PA 19103
                                                  Telephone: (215) 496-8282
                                                  Fax: (215) 496-0999
                                                  sparis@smbb.com
                                                  phoward@smbb.com

Kenneth A. Wexler
Melinda J. Morales
WEXLER BOLEY & ELGERSMA LLP
311 S. Wacker Drive–Ste. 5450
Chicago, Illinois, 60606
(312) 346-2222
kaw@wbe-llp.com

E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
THE MILLER LAW FIRM, P.C.
950 West University Drive, Suite 300
Rochester, MI  48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

Daniel E. Gustafson
David A. Goodwin
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 S. Sixth St., Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com

**Attorneys for Plaintiffs and the
Proposed Classes**